UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Fawn Mia Gobis

    v.                                                Civil No. 15-cv-269-JD
                                                      Opinion No. 2016 DNH 097
Carolyn W. Colvin,
Acting Commissioner
Social Security Administration


O R D E R

Fawn Mia Gobis seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her applications for social security disability benefits and supplemental security income. Gobis contends that the Administrative Law Judge ("ALJ") erred in assessing her residual functional capacity and in finding that she could do her past relevant work. The Acting Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background[1]

Gobis applied for social security disability benefits and supplemental security income in April and June of 2012 when she was forty-seven years old. She initially alleged an onset date of May 15, 2007, but later amended the date to April 17, 2008, based on impairments due to fibromyalgia, spinal stenosis, osteoarthritis, and thyroid disease. Gobis graduated from high school, has training in real estate, and worked as a real estate agent.

Jennifer Jones, D.O. treated Gobis for complaints of body aches and trouble sleeping during 2008. Gobis was referred to Dr. Margarita Ochoa-Maya for an endocrinology consultation in June of 2008. Dr. Ochoa-Maya found hypothyroidism and low

---

[1] The background information is summarized from the parties' joint statement of material facts. See LR 9.1(c).

metabolism with insulin resistance.  Gobis was taking Percocet for pain due to fibromyalgia.

In January of 2009, Gobis was examined for a rheumatology consultation.  The physician's assistant who did the examination found symptoms consistent with fibromyalgia.  She urged Gobis to exercise and to lose weight.

In November of 2009, Gobis reported difficulty with depression and stress and was given samples of new medication. Gobis was seen in May of 2010 for an exacerbation of fibromyalgia.  A rheumatology consultation in August of 2010 confirmed the fibromyalgia diagnosis.

Gobis was treated for pain in her feet in early 2011. After falling through a grate in May of 2011, Gobis was treated at the emergency room for acute cervical strain and exacerbation of fibromyalgia.  X-rays showed moderate to severe arthritis in her cervical and lumbar spine.  Gobis continued to be treated by Dr. Jones and a physician's assistant over the next year.

On June 20, 2012, Gobis had a rheumatology examination with John Yost, D.O.  She reported back pain for the past five years. Gobis said that she worked in real estate and lived with her three children, including her nine year old daughter who had cerebral palsy.  Dr. Yost diagnosed chronic back pain due to a degenerative disc and facet osteoarthritis and noted that the

underlying fibromyalgia was not the major cause of Gobis's symptoms. Dr. Rowland Hazard confirmed degenerative disc changes in September of 2012, but he concluded that Gobis was not a candidate for surgery, and gave her a steroid injection.

A state agency medical consultant, Dr. Hugh Fairley, completed a physical functional capacity assessment in September of 2012 based on a review of Gobis's medical records. Dr. Fairley found that Gobis had severe impairments due to obesity and degenerative disc disease but did not find that fibromyalgia was a severe impairment. He assessed Gobis's physical capacity to allow her to do full time sedentary work with some postural and environmental limitations.

Based on a psychological consultative examination in October of 2012, Juliana Read, Ph.D. found that Gobis had only slight impairments and was mentally able to make simple decisions, interact appropriately with supervisors, and tolerate a work setting. Also in October of 2012, a state agency consultant, Laura Landerman, Ph.D. concluded that Gobis's anxiety and affective disorders were not severe impairments.

From the fall of 2012 through the fall of 2013, Gobis reported to her medical providers that she had some neck and back pain but was walking or doing other exercise at least several times each week. Her examinations produced mostly

normal results, including full range of motion. Psychological examinations resulted in diagnoses of anxiety disorder, depressive disorder, and post traumatic stress disorder but full affect and normal thought processes.

A hearing on Gobis's applications was held before an ALJ on November 12, 2013. Gobis was represented by her attorney at the hearing. Gobis testified about her pain and body aches and the medication she was taking. With respect to her daily activities, Gobis said that she got her children ready for school, took care of her daughter with cerebral palsy, did grocery shopping, did light household chores, and attended doctors appointments. She also testified that her real estate license had become inactive that year.

A vocational expert testified that Gobis's past relevant work as a real estate agent was skilled work that generally was performed at the light exertional level. The vocational expert stated that Gobis performed the job at the sedentary level. The ALJ asked the vocational expert what jobs were available for someone who could do work at the sedentary level with some postural and environmental limitations. The vocational expert responded that a person with those limitations could do Gobis's past work as a real estate agent and could also work as a sorter, document preparer, and appointment clerk. In response

to questions by Gobis's attorney, the vocational expert testified that if the person were "off task" twenty percent of the day or needed additional ten-minute breaks, those limitations would preclude all work.

The ALJ found that Gobis had severe impairments of degenerative disc disease with cervical spondylosis, fibromyalgia, and obesity. The ALJ assessed a residual functional capacity to do sedentary work with postural and environmental limitations. Based on that residual functional capacity, the ALJ found that Gobis could do her past relevant work as a real estate agent or, alternatively, that other jobs as identified by the vocational expert existed that she could do. The ALJ concluded that Gobis was not disabled. The Appeals Council denied Gobis's request for review.

## Discussion

Gobis moves to reverse the ALJ's decision on the grounds that the ALJ erred in assessing her residual functional capacity. She also contends that the ALJ erred in finding that she could return to her previous relevant work as a real estate agent. The Acting Commissioner contends that the ALJ properly assessed Gobis's residual functional capacity and correctly found that she was not disabled.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520 and 416.920.[2] The claimant bears the burden through the first four steps of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

A. Residual Functional Capacity

In assessing a claimant's residual functional capacity, the ALJ determines "the most [the claimant] can do despite [her] limitations . . . based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). Gobis contends that the ALJ's assessment is wrong because the ALJ improperly weighed the medical opinions in the record and failed to consider

---

[2] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

evidence provided after the hearing.[3]  The Acting Commissioner supports the ALJ's assessment.

1. Medical Opinion Evidence

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).  Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention.  § 404.1527(c).  The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions of treating or examining medical sources.  § 404.1527(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and XVI:  Consideration of Administrative Findings of Fact by State

---

[3] To the extent Gobis also intended to argue that the ALJ improperly assessed her credibility, as the Acting Commissioner points out, Gobis did not develop that theory.  The only mention of credibility in the memorandum is an incomplete sentence: "(2)improperly [sic] assessing her credibility."  That statement is insufficient to allow review.
  The summary of Gobis's medical records in the middle of the memorandum is not linked to any specific issue and appears to be a misplaced background section.  The court notes that Gobis is represented by counsel, so that her memorandum is not entitled to the consideration that might be afforded a pro se litigant.

Agency Medical and Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Medical opinions based on the claimant's subjective reports, rather than objective medical findings, may be entitled to less weight. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Further, treatment notes that merely repeat a claimant's subjective complaints are not medical opinions at all because the notes are not "'statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, and what you can still do despite impairment(s), and your physical or mental restrictions.'" Hesson v. Colvin, 2015 WL 7259747, at *4 (D. Me. Sept. 29, 2015) (quoting 20 C.F.R. § 416.927(a)(2)).

The ALJ gave Dr. Fairley's opinion great weight because Dr. Fairley is familiar with the Social Security structure and the opinion was consistent with Gobis's limited treatment for back pain before 2013 and Gobis's daily activities. Gobis faults the ALJ's evaluation of Dr. Fairley's opinion on the grounds that Dr. Fairley did not cite her limited treatment and her activities as bases for his opinion and that her activities should not affect a residual functional capacity assessment.

Gobis's challenge is based on a misunderstanding of the applicable law. As noted above, an ALJ evaluates medical opinion evidence based, in part, on the consistency of the opinion with other record evidence. § 404.1527(c). The ALJ properly explained his reliance on Dr. Fairley's opinion, based, in part, on the consistency of the opinion with other record evidence. Therefore, Gobis has not shown that the ALJ erred in the weight given to Dr. Fairley's opinion.[4]

Further, in assessing residual functional capacity, an ALJ considers, among other things, the claimant's subjective complaints in comparison to the record evidence, including the claimant's activities of daily living. 20 C.F.R. § 404.1529(a); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). Gobis does not dispute that her daily activities have included taking care of her children and working part time as a real estate agent. Therefore, the ALJ properly considered her activities in assessing her residual functional capacity.

2. Evidence Submitted After the Hearing

Gobis's counsel submitted additional evidence to the ALJ ten days after the hearing. The ALJ refused to consider the

---

[4] To the extent Gobis may have intended to argue that the ALJ should have considered treatment notes of her treating physician or others that document Gobis's subjective complaints as medical opinions, as explained above, those reports are not medical opinions.

evidence because it was late and Gobis did not make the required showing that "there is a reasonable possibility" that the new evidence would affect the outcome and that the delay was caused by misleading agency action, a physical or mental limitation, or some other unusual circumstance.  20 C.F.R. § 405.331(c)(3).[5] Gobis asserts that the ALJ erred in refusing the evidence, arguing that to the extent the ALJ found that Dr. Jones's opinion, which was part of the new evidence, was inadequate he was obligated to contact Dr. Jones to obtain additional evidence.

   Gobis relies on 20 C.F.R. § 404.1512(e) and § 416.912(e) to support her theory that the ALJ erred in not contacting Dr. Jones before rejecting the evidence.  As the Acting Commissioner explains, however, § 404.1512(e) and § 416.912(e) were amended effective March 26, 2012, before the hearing in this case.  See 77 Fed. Reg. 10651, 2011 WL 7404303 (Feb. 23, 2012).  As amended, the cited provisions no longer require an ALJ to recontact a medical source.

   Gobis's theory to counter the ALJ's conclusion that the new evidence would not change the outcome is based on regulations that no longer exist and, therefore, lacks merit.  Gobis also

---

   [5] Although the ALJ erroneously cited § 405.331(b), he correctly provided the applicable standard under § 405.331(c)(3).

11

failed to address the other requirements of § 405.331(c) that the ALJ found she had not satisfied. Therefore, Gobis has not shown that the ALJ erred in failing to accept the late evidence.

B. Step Four Finding

Gobis challenges the ALJ's finding at Step Four that she could return to her previous relevant work as a real estate agent. She relies on Social Security Ruling ("SSR") 82-62 to argue that the ALJ improperly concluded that she could return to her previous work without making the required factual findings. The Acting Commissioner demonstrates that the ALJ did make the required factual findings and also argues that any error would be harmless because the ALJ also found at Step Five that there were other jobs that Gobis could do.

SSR 82-62, "Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General," requires the ALJ to make factual findings to support a determination that a claimant can return to her past relevant job. 1982 WL 31386, at *4. Those are findings as to the claimant's residual functional capacity, findings as to the physical and mental demands of the past job, and a finding that the claimant can do the past work in light of her residual functional capacity. Id.

As stated above, the ALJ found that Gobis had a residual functional capacity to do sedentary work with postural and

12

environmental limitations. He also found, based on the vocational expert's testimony, that Gobis performed her job as a real estate agent at the sedentary exertional level even though the Dictionary of Occupational Titles ("DOT") identifies it as a light duty job. The ALJ then found that Gobis's residual functional capacity for sedentary work would allow her to do her past work as a real estate agent.

Gobis argues, nevertheless, that the ALJ failed to properly consider the mental and physical demands of her work as a real estate agent. She also argues that because the DOT identifies real estate agent as a light duty job, the vocational expert's testimony conflicts with the DOT. She further argues that the ALJ's finding that she could work as a "store associate" was erroneous because no such job appears in the DOT.[6]

"At Step Four of the sequential analysis, the ALJ determines whether the claimant is able to do her past relevant work, either as that work is categorized in the [DOT] or as the work was actually performed by the claimant." Mohr v. Colvin, 2015 WL 1499454, at *5 (D.N.H. Apr. 1, 2015) (citing Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991)).

---

[6] Gobis's reference to "store associate" appears to be a mistaken reference to a different case. Neither the vocational expert nor the ALJ in this case found that Gobis could work as a "store associate." Gobis's counsel would be well advised to proofread her papers before submitting them to the court.

The vocational expert testified that although the DOT identified the real estate agent job as light duty work, Gobis performed the job at the sedentary level.  Therefore, Gobis has not shown a conflict between the vocational expert's opinion and the DOT. See, e.g., Ellis v. Comm'r of Social Security, 2016 WL 1090373, at *6 (E.D. Mich. Mar. 21, 2016).

Gobis also argues that the record does not support the vocational expert's opinion that she performed the real estate agent job at the sedentary exertional level.  In support, Gobis states only:  "There is certainly no evidence that an individual who works 20 hours per week and yet performs the. [sic]" Gobis's incomplete argument does not demonstrate an error at Step Four, where she bears the burden of making a threshold showing that she is unable to perform her past relevant work. See Mohr, 2015 WL 1499454, at *5.  In addition, to the extent Gobis intended to argue that working part time as a real estate agent does not show she could work full time, the vocational expert was addressing the exertional level of the work she did not whether she worked full or part time.  Further, Gobis worked full time as a real estate agent in 2006 and 2007.

In any case, even if the finding at Step Four was erroneous, the ALJ made an alternative finding at Step Five that Gobis was not disabled because there were other jobs that she

could do, which were identified by the vocational expert.  Gobis does not challenge that finding.  Therefore, even if Gobis were able to show that the ALJ erred at Step Four, the decision would be affirmed based on the Step Five finding.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 10) is denied.  The Acting Commissioner's motion to affirm (document no. 13) is granted.

The decision of the Acting Commissioner is affirmed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

June 7, 2016

cc: Judith E. Gola, Esq.
    Robert J. Rabuck, Esq.
    T. David Plourde, Esq.